IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mikal J. Ruffin, | ) | Case No. 8:12-cv-00592-JMC-JDA |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Warden Michael McCall, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on Respondent's motion for summary judgment. [Doc. 32.] Petitioner, proceeding pro se, is a state prisoner who seeks relief under 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

Petitioner filed this Petition for writ of habeas corpus on February 23, 2012.[1] [Doc. 1.] On September 10, 2012, Respondent filed a motion for summary judgment and a return and memorandum. [Docs. 32–34.] On September 11, 2012, the Court filed an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the summary judgment procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 35.] On October 9, 2012, Petitioner filed a response in opposition to Respondent's motion. [Doc. 37.] Having carefully considered

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Petitioner, this action was filed on February 23, 2012. [Doc. 1-3 (envelope marked as received by prison mailroom on February 23, 2012).]

the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## BACKGROUND

Petitioner is presently confined at the Perry Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment of the Cherokee County Clerk of Court.  [Doc. 1 at 1.]  In August 1998,[2] Petitioner was indicted for one count of murder and one count of possession of a firearm or knife during the commission of or attempt to commit a violent crime.  [Doc. 34-1.]  Petitioner was also indicted for assault with intent to kill.  [Doc. 33 at 2; App. 11.[3]]  In October 1998, Petitioner was further indicted for one count of attempted armed robbery and one count of possession of a firearm or knife during the commission of or attempt to commit a violent crime.[4]  [Doc. 34-2.] On September 10, 2001, represented by Fletcher Smith ("Smith"), Petitioner proceeded to trial.  [App. 1–548.]  On September 12, 2001, the jury returned its verdict, finding Petitioner guilty of murder and attempted armed robbery but not guilty of assault with attempt to kill and the possession of a weapon charges.[5]  [App. 538.]  Petitioner was

---

[2]The face of the indictment indicates Petitioner was indicted on the day of the murder in August 1998, but Petitioner was actually indicted at a later date.  [*See, e.g.*, App. 728.]

[3]The Court notes the indictment for assault with intent to kill, No. 1998-GS-11-1313, was not included in the record before the Court.  [*See* Doc. 33 at 7–8 (listing attachments to Respondent's return and memorandum).]  The Court also notes the Appendix can be found at Docket Entry Numbers 33-1 through 33-7.

[4]Petitioner was also indicted in 2001 for two counts of accessory after the fact to a felony—one for the felony of murder, the other for the felony of attempted armed robbery—and two counts of accessory before the fact to a felony—one for the felony of murder, the other for the felony of attempted armed robbery.  [App. 12–14.]

[5]As the trial judge explained, if the jury found Petitioner guilty of any of the following charges, the jury need not consider the accessory before or after the fact charges: murder, possession of a firearm during the commission of or attempt to commit a violent crime, assault with attempt to kill, or attempted armed robbery.  [*See, e.g.*, App. 524.]

sentenced to twenty years imprisonment for the attempted armed robbery conviction and life imprisonment for the murder conviction, with the sentences to run concurrently. [App. 546–47.]

**Direct Appeal**

Petitioner timely filed a notice of appeal. On July 18, 2003, Joseph L. Savitz, III ("Savitz"), of the South Carolina Office of Appellate Defense filed a brief on Petitioner's behalf, raising the following claim:

> The judge erred by refusing to permit appellant to introduce evidence that he was not a thief, since evidence of his good character in this regard was pertinent to rebut the state's contention that he had been the principal instigator of the robbery plot, and was therefore admissible under Evidence Rule 404.

[Doc. 34-4 at 4.] The State also filed a brief. [Doc. 34-5.] On December 11, 2003, the South Carolina Court of Appeals issued a per curiam opinion affirming Petitioner's conviction and sentence. [Doc. 34-6.] Remittitur was issued on January 6, 2004. [Doc. 34-7.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on January 13, 2004. [Doc. 33 at 5; Doc. 34-8 at 1.[6]] The application was amended, and through attorney Raymond E. MacKay ("MacKay"), Petitioner asserted claims of ineffective

---

[6]The Court notes that it could not locate a copy of Petitioner's original PCR application in the record before the Court. The Court also notes that, at least as of October 2004, when the State filed its return to Petitioner's original PCR application, Petitioner appears to have been represented by counsel. [*See* Doc. 34-8 at 6 (serving a copy of the return on attorney Joseph L. Mathis).]

assistance of trial and appellate counsel, lack of subject matter jurisdiction, and violation

of due process, supported by the following allegations:

(a) Trial counsel's failure to fully investigate, inadequate advice, failure to inform of potential defense, failure to call witnesses, failure to move to suppress/object to evidence, failure to object to Solicitor's arguments, failure to request/object to instructions, failure to challenge defective indictment, failure to object to sentence, failure to challenge inconsistent jury verdict; failure to proffer evidence of defendant's good character; failure to request charge on same.

(b) Defective murder indictment on its face. Murder indictment indicates the Grand Jury indicted the Defendant on the date of the alleged murder.

(c) Failure to object to use of out of Court Co-Defendant statement to bolster State's allegations, failure to object to defective indictment.

(d) Failing to make proffer of proof as to character evidence ruled inadmissible.

(e) By Failing to develop Defendant's character evidence.

(f) Failure to develop appropriate argument against admission of Co-Defendant's out of Court written statement.

(g) As to Appellate counsel, failure to appeal trial Judge's ruling regarding Defendant's Motions regarding jury selection.

(h) As to Appellate counsel, by failing to appeal trial court's ruling of admissibility of co-Defendant Leon Ross' out of Court written statement.

(i) As to Appellate counsel, by failing to appeal Trial Court's ruling denying Defendant's Motion for new trial or judgment not withstanding verdict on basis of jury's inconsistent verdict.

[App. 550–51.[7]]

A hearing was held on the PCR application on October 25, 2005, and Petitioner was represented at the hearing by MacKay. [App. 554–751.] Testimony was received from Smith and Savitz—Petitioner's trial and appellate attorneys—as well as Michael Folkes, Blake Foster, Nathan Mack, Brandy McBee, Stevie Parker, Larry Brooks, Ida Coleman, Kimberly Weathers, Edith Humphries, and Petitioner. [*Id.*] Additional testimony was received from Fritzi Self ("Self") through a deposition conducted on January 19, 2006. [App. 752–64.] On March 26, 2007, the PCR court issued an order denying and dismissing the application with prejudice. [App. 772–89.] A notice of appeal was timely filed and served. [Doc. 34-3.]

On September 17, 2008, MacKay filed a petition for writ of certiorari on Petitioner's behalf in the South Carolina Supreme Court, seeking review of the PCR court's decision and raising the following questions:

1. Did the Circuit Court err in holding that petitioner's trial counsel was not ineffective in failing to proffer evidence of applicant's character from witness Fritzi Self?

2. Did the Circuit Court err in holding that the petitioner's trial counsel was not ineffective in failing to investigate and prepare witnesses?

3. Did the Circuit Court err in holding that the petitioner's trial counsel was not ineffective in failing to argue to keep co-defendant's statement out of evidence at trial?

---

[7]The Court notes it appears Petitioner filed two amendments to his original PCR application, but the Court could not locate Petitioner's first amended application in the record before the Court. [*See* Doc. 33 at 5 (stating Petitioner filed an amended application on November 22, 2004); App. 549–53 (PCR application entitled "Second Amended Application for Post-Conviction Relief" that was notarized on October 11, 2005 and date-stamped by the Cherokee County Clerk of Court on October 13, 2005).]

4.      Did the Circuit Court err in holding that the petitioner's trial counsel was not ineffective in failing to object to the State's vouching for co-defendant's credibility?

5.      Did the Circuit Court err in holding that the petitioner's trial counsel was not ineffective in failing to request a jury instruction on character evidence?

[Doc. 34-9.] Subsequently, Petitioner moved to relieve MacKay as his counsel, to proceed pro se, and to file a supplemental petition [Doc. 34-10; *see also* Doc. 34-13 (replying to State's response to his motion)], to which the State filed a response in opposition [Doc. 34-11] and MacKay indicated he had no objection [Doc. 34-12]. On February 4, 2009, the South Carolina Supreme Court denied Petitioner's motion to relieve counsel and proceed pro se. [Doc. 34-14.] Thereafter, the State filed a return to Petitioner's petition for writ of certiorari. [Doc. 34-15.]

On November 5, 2010, the Supreme Court granted the petition as to Questions 1, 3, 4, and 5 and denied the petition as to Question 2. [Doc. 34-16.] The parties then submitted briefs on the issues. [Docs. 34-17, 34-18.] On July 11, 2011, after review of the appendix and the briefs, the Supreme Court dismissed the writ of certiorari as improvidently granted. [Doc. 34-19.] Remittitur was issued on August 1, 2011. [Doc. 34-20.]

**Petition for Writ of Habeas Corpus**

Petitioner filed this Petition for writ of habeas corpus on February 23, 2012 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds for relief, quoted substantially verbatim:

**Ground One**:    Petitioner was denied a fair trial in violation of the United States Constitution Fourtee[n]th Amendment

6

Due Process Clause when the trial Judge refused to permit Petitioner to introduce evidence that he was not a thief, since evidence of his good character in this regard was pertinent to rebut the state's contention that he had been the principal instigator of the robbery plot, and was therefore a legitimate [and] relevant part of his defense to the charges against him.

*Supporting Facts:* By the state's own admission, [Petitioner] did not shoot or attempt to rob anybody. Instead, they contended that he had initiated the robbery plot and then aided and abetted their star witness, Leon Ross, who had been the principal perpetrator. Ross testified that the murder itself had been entirely his idea and had occurred spontaneously during the robbery attempt. [Petitioner], on the other hand, told the police that, although he had given Ross a lift to the scene of the murder and attempted robbery (a truckstop where Ross had previously worked), he had no idea Ross intended to commit those crimes.

The first witness for the defense was the human resource manager for the company where [Petitioner] had been steadily employed for "[a]pproximately three years." Defense counsel attempted to place [Petitioner's] good character in issue by asking this witness the following question: "[T]he whole time that [Petitioner] was at your place... was there any disciplinary records where he was a thief or anything of that nature?" The solicitor objected for precisely that reason – that defense counsel was attempting to place [Petitioner's] character in issue – and the judge sustained the objection on that basis. (The judge later struck from the record another witness' testimony that [Petitioner] was "a respectable person.")

. . . .

Evidence that [Petitioner] was not known to be a thief was pertinent to rebut the state's contention that he had been the mastermind behind the attempted robbery that ended in murder. The solicitor's objection underscores this point: by placing his character in issue, [Petitioner] was attempting to prove that he was not the type of person who would have become involved in a robbery

7

plot because he was not a thief. For this reason, the Court should reverse [Petitioner's] convictions for murder and attempted armed robbery and remand for a new trial.

**Ground Two**:    Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to first proffer evidence of Petitioner's character from witness F[r]itzi Self then ask that the Court allow such character evidence in.

*Supporting Facts:*    The Trial Court's refusal to permit the Applicant to offer character evidence through the witness Fritzi Self and others is documented and argued as the sole basis of the Applicant's direct appeal. Also, failure to proffer testimony of said witness was the sole ground for denial of the Applicant's direct appeal. The Applicant through deposition testimony offered in his post conviction relief action the testimony of this witness which his trial counsel had failed to proffer. In her deposition testimony Ms. Self stated that in his three years of working for Grover Industries the Applicant had no disciplinary actions where he was a thief or anything of that nature. Further, Ms. Self testified as to the Applicant not having a reputation for violence and that she had enough knowledge of him to state that opinion. Lastly, Ms. Self testified that the Applicant did enjoy a reputation among his peers at the plant for truthfulness and honesty and that the workforce at Grover Industries, though it was located across the state line in North Carolina, was made up of people from both Kings Mountain and Blacksburg (Cherokee County) community. Applicant argued at his PCR hearing that the state had placed the Applicant's character into issue in its opening remarks at trial. Applicant's trial counsel admitted in testimony that the state's opening remarks could have given an inference that the Applicant was deceitful and that his truth and veracity was at issue. Further, Applicant's trial attorney admitted that the Applicant's credibility was important to his defense against the murder charges. Applicant was entitled to offer evidence of his good character as to truthfulness and veracity and peacefulness or nonviolence and was not permitted to do so by the Trial Court. It should be

8

noted that the record is devoid of any other evidence of planning or prior knowledge by the Applicant of the co-defendant Ross' intent to commit a robbery prior to its occurrence except for co-defendant Ross' testimony.

**Ground Three**:    Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to investigate and prepare witnesses and call additional witnesses.

*Supporting Facts*:    The PCR Transcript is laden with evidence that Appellant's trial counsel failed to prepare various character witnesses offered at trial. The Appellant's trial counsel's failure to adequately prepare witness Ida Coleman caused the admission of general, nonspecific to this case, character evidence. No testimony specific as to truthfulness, honesty, peacefulness or nonviolence of the Applicant. Ms. Ida Coleman testified in Appellant's PCR Action that she and further that the Applicant enjoyed a community reputation for peacefulness and honesty and veracity. Witness Kimberly Weathers the Applicant's girlfriend at the time of the murder similarly testified at the PCR hearing that she had had no preparation from Appellant's trial counsel as to the basis of reputation testimony and that upon further questioning the Applicant enjoyed a community based reputation for peacefulness, nonviolence and truthfulness and honesty. Ms. Edith Humphries, Applicant's mother, was not called on to testify at trial but at the PCR hearing testified that she was requested by Appellant's trial counsel to find character witnesses but was not asked to be a character witness herself. She further testified at the PCR hearing that her son enjoyed a reputation for truthfulness and honesty and nonviolence.

**Ground Four**:    Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to adequately argue to keep co-defendant's statement out of evidence at trial.

*Supporting Facts*:    The Applicant contends that his trial counsel failed to call certain witnesses to impeach the credibility of co-

defendant Ross both in the way of his testimony and prior out of Court consistent statements even though the names of these witnesses were given to trial counsel far enough in advance to prepare and use them at trial. Particularly, those witnesses not called at trial but later called at Applicant's PCR hearing were Stevie Parker, Detective Michael Folkes of the Cherokee County Sheriff's Department, Blake Foster and Nathan Mack. Detective Folkes set the timeline for the taking of co-defendant Ross' out of Court statement as the triggerman in the murder. Further, witnesses Blake Foster and Nathan Mack both inmates at the local detention center at the time of co-defendant Ross' initial arrest and later giving of his out of Court statement testified as to co-defendant Ross' intent to cause the Applicant to serve as much time as possible. These three witnesses were key to the exclusion of the co-defendant Ross' prior out of Court consistent statement under Rule 801(d)(1)(B) of the South Carolina Rules of Evidence. Without this testimony, whose secondary purpose would have to impeach the credibility of the only witness testifying that the Applicant had prior knowledge of the intent to commit a robbery by the co-defendant Ross, the trial Court's denial of said motion to exclude or denial of the Applicant's trial counsel's objection to its admission was arguably sound.

**Ground Five**:     Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to object to the state's closing argument.

*Supporting Facts*:     As credibility of co-defendant and the Applicant was the recurring central issue in this case, the Applicant contends that his trial counsel should have objected to the Solicitor's closing remarks wherein he, in essence, testified as to the timing of his decision not to seek the death penalty on the co-defendant Ross in an effort to bolster co-defendant Ross' credibility and impeach that of the Applicant. Further, during the Solicitor's questioning of co-defendant Ross on redirect, the Assistant Solicitor solicited from the witness on three occasions that the co-defendant Ross had just been told to tell the truth by the Solicitor, acting as co-

prosecutor at the time. And constituted improper vouching of the state's principal witness' credibility.

**Ground Six**:    Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to request a jury instruction of character evidence.

*Supporting Facts*:    The Applicant was entitled to introduce evidence as to a pertinent trait of his character regardless of whether or not he testified at trial. The Applicant did at trial offer testimony through Steve Moore as to his character for peacefulness and as generally enjoying a good reputation. Also through witness Ida Coleman general reputation evidence was admitted at trial. Appellant's trial counsel failed to request said charge or as previously referenced failed to further establish character evidence on his behalf. The Solicitor according to the Applicant's trial counsel had placed the Defendant's character into evidence in his opening remarks regarding the Defendant attempting to minimize his role in the murder. Generally, where requested and there is evidence of good character, a Defendant is entitled to an instruction to the effect that evidence of good character and good reputation may in and of itself create a doubt as to guilt and should be considered by the jury, along with all the other evidence, in determining the guilt or innocence of the Defendant.

[Doc. 1 (citations omitted).]

As stated, Respondent filed a motion for summary judgment on September 10, 2012. [Doc. 32.] On October 9, 2012, Petitioner filed a response in opposition to the motion.[8] [Doc. 37.] Accordingly, Respondent's motion is now ripe for review.

---

[8]Petitioner raised an additional ground for relief in his response in opposition. [Doc. 37 at 7 (arguing the Court should consider the following claim: "Did Trial Judge err[] in refusing to give a direct[ed] verdict on the charges of murder and attempted armed robbery, under the hands of one is the hands of all").] Because this ground for relief was not in the Petition and Petitioner has not sought to amend the Petition, this ground is not properly before the Court and, thus, has not been considered. *See White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) ("[A] party is generally not permitted to raise a new claim in response to a motion for summary judgment." (citing *Taylor v. Canteen Corp.*, 789 F. Supp. 279, 285 (C.D.

## APPLICABLE LAW

**Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

---

Ill. 1992)); *Miles v. Owen*, No. 4:12-998-MGL, 2013 WL 227766, at *2 (D.S.C. Jan. 22, 2013) ("The Court . . . declines to address Petitioner's new claims which he raises for the first time in his response and sur-reply. To the extent that Petitioner's response in opposition to the motion to dismiss presents issues and claims not contained in his Petition, these claims are not properly before the court.").

12

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### Procedural Bar

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id.*  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

*Exhaustion*

Section 2254 contains the requirement of exhausting state court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.  The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies.  *Id.* § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court."  *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Thus, a federal court may

consider only those issues that have been properly presented to the highest state court with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9] Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts. For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment. S.C. App. Ct. R. 203(b)(2), (d)(1)(B). A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45(A).

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168, 1173

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

(4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the highest South Carolina court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the court actually reached the merits of the claim.  *See State v. McKennedy*, 559 S.E.2d 850, 854 (S.C. 2002) (reiterating that discretionary review by the South Carolina Supreme Court is not required to exhaust available state court remedies: "[South Carolina] has identified the petition for discretionary review to [the South Carolina Supreme Court] in criminal and post-conviction cases as *outside* South Carolina's standard review process. In [the South Carolina Supreme Court's] 1990 order, th[e] Court stated that petitions for rehearing and certiorari following an adverse Court of Appeals' decision are not required in order to exhaust all available state remedies." (emphasis in original) (citing *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990))).

### *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See id.*  Bypass can occur at

18

any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3) & 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

19

U.S. 478, 496 (1986). Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim. *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim. *Sykes*, 433 U.S. at 87. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure or where a "fundamental miscarriage of justice" has occurred. *Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel. *Id.* at 487–89; *Reed*,

468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Carrier*, 477 U.S. at 492.  To show actual prejudice, the petitioner must demonstrate more than plain error.  *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice.  To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent.  *See Carrier*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent").  Actual innocence is defined as factual innocence, not legal innocence.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  To pass through this actual innocence standard, the petitioner's case must be truly extraordinary.  *Carrier*, 477 U.S. at 496.

## DISCUSSION

**Procedurally Barred Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents.  *Gray v. Netherland*, 518 U.S. 152, 165–66 (1996).  If the defense is raised, it is the petitioner's burden to raise cause and prejudice or actual innocence; if not raised by the petitioner, the court need not consider the defaulted claim.  *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).  Here, Respondent contends Grounds One, Four, and Five are procedurally barred.  The Court agrees Grounds One and Four are procedurally barred but disagrees as to Ground Five.

21

### *Ground One*

Respondent argues Ground One is procedurally barred because "Petitioner failed to present this claim in state court and is unable to return to state court in order to lodge a timely objection on this ground, which in turn, would have allowed appellate counsel to raise the issue on direct appeal." [Doc. 33 at 19.] Respondent also argues that, to the extent Petitioner raised Ground One in his direct appeal, Ground One is procedurally barred because Petitioner failed to preserve the issue for appellate review, as noted by the South Carolina Court of Appeals in affirming Petitioner's conviction and sentence. [*Id.* at 19 n.8.] Liberally construing the Petition, Ground One is sufficiently similar to the issue raised in Petitioner's direct appeal for the Court to conclude Petitioner raised Ground One in state court. [*Compare* Doc. 1 at 6–7 ("Petitioner was denied a fair trial in violation of the United States Constitution Fourtee[n]th Amendment Due Process Clause when the trial Judge refused to permit Petitioner to introduce evidence that he was not a thief, since evidence of his good character in this regard was pertinent to rebut the state's contention that he had been the principal instigator of the robbery plot."), *with* Doc. 34-4 at 4 ("The judge erred by refusing to permit appellant to introduce evidence that he was not a thief, since evidence of his good character in this regard was pertinent to rebut the state's contention that he had been the principal instigator of the robbery plot.").] However, as Respondent argues, Ground One is procedurally barred because the South Carolina Court of Appeals applied an independent and adequate state law basis to bar Petitioner's claim on direct appeal.

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default

and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (internal quotation marks omitted) (quoting *Carrier*, 477 U.S. at 485, 495). However, "a federal claimant's procedural default precludes federal habeas review . . . only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Id.* That is, a procedural bar to the claim will be applied in the federal habeas action only "if the decision of the last state court to which the petitioner presented his federal claims . . . clearly and expressly rel[ied] on an independent and adequate state ground." *Coleman*, 501 U.S. at 735.

Here, in its decision in Petitioner's direct appeal,[10] the South Carolina Court of Appeals stated,

> We affirm pursuant to Rule 220(b)(2), SCACR[11] and the following authorities: State v. Adams, 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct. App. 2003) (arguments not raised to or ruled upon by the trial court are not preserved for appellate review); State v. Huggins, 336 S.C. 200, 205, 519 S.E.2d 574, 576 (1999) (it is well settled that issues may not be raised for the first time on appeal); State v. Perez, 334, S.C. 563, 565–66, 514 S.E.2d 754, 755 (1999) (issue not raised to and ruled on by trial court is not preserved for appeal); State v. Mitchell, 330 S.C. 189, 195, 498 S.E.2d 642, 645 (1998) (where counsel acquiesced in the judge's limitation of his cross-examination and made no other objections, issue was not properly preserved for review; a party cannot acquiesce to

---

[10]As stated, the Court has construed Ground One of the Petition as raising the same claim Petitioner raised in his direct appeal. However, to the extent Ground One raises a different claim, such claim is also procedurally barred—absent a showing of cause and prejudice, which is discussed below—because Petitioner failed to present that claim to the South Carolina courts. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Sykes*, 433 U.S. at 87; *Matthews*, 105 F.3d at 915.

[11]Rule 220(b)(2) of the South Carolina Appellate Court Rules states that "[t]he Court of Appeals need not address a point which is manifestly without merit."

issue at trial and then complain on appeal); <u>State v. Sampson</u>, 317 S.C. 423, 427, 454 S.E.2d 721, 723 (Ct. App. 1995) (unchallenged rulings excluding evidence were law of the case and were sufficient basis for affirmance); <u>State v. Hawkins</u>, 310 S.C. 50, 57, 425 S.E.2d 50, 54 (Ct. App. 1992) (reviewing court may not rule on alleged error in exclusion of testimony unless record on appeal shows fairly what the rejected testimony would have been).

[Doc. 34-6 at 2 (footnote added).]   As to whether the Court of Appeals employed an

independent and adequate state law ground for its decision, another court in this District

has explained,

> South Carolina has a contemporaneous objection rule.  *See Pike v. South Carolina Department of Transportation*, 322 S.C. 605, 506 S.E.2d 516, 521 (1998) ("For an issue to be preserved for appeal, it must have been raised to and ruled upon by the trial court.")   The failure to raise a contemporaneous objection at trial may provide an independent and adequate basis for state procedural default. A state procedural rule is independent if it is not based on a federal constitutional ruling.   A state procedural rule is adequate if it is firmly established and regularly and consistently applied by the state court.  *Weeks v. Angelone*, 176 F.3d 249, 270 (4th Cir. 1999).   South Carolina's contemporaneous objection rule does not implicate the federal constitution, and it is, therefore, independent.   The South Carolina courts have regularly and consistently applied the contemporaneous objection rule.  *See Furr v. South Carolina*, 2002 WL 31996016 (D.S.C.) (collecting cases).

*Richardson v. South Carolina*, No. 3:09-1107-MBS-JRM, 2010 WL 1346302, at *9 (D.S.C.

Feb. 12, 2010), *Report and Recommendation adopted by* 2010 WL 1346420 (D.S.C. Mar.

31, 2010); *see also Wilson v. Moore*, 178 F.3d 266, 273–74 (4th Cir. 1999) (delineating

"guideposts" for determining whether "a state court's summary disposition . . . 'fairly

appears' to rest on federal law or on an adequate and independent state ground").  Here,

the Court of Appeals expressly relied on the contemporaneous objection rule, which is an

independent and adequate state law ground in affirming Petitioner's conviction and sentence. Accordingly, Ground One, raising the same claim that was raised on direct appeal, is barred from federal habeas review absent a showing of cause and prejudice.

### Ground Four

Respondent contends Ground Four is procedurally barred because the PCR court's determination that Petitioner was barred from raising this ground in his PCR application—because he could have raised this issue in his direct appeal—is supported by an independent and adequate state law ground. [*Id.* at 19–20.] As discussed, a federal habeas claim will be barred "if the decision of the last state court to which the petitioner presented his federal claims . . . clearly and expressly rel[ied] on an independent and adequate state ground." *Coleman*, 501 U.S. at 735. Although a federal court may consider a claim raised in a federal habeas petition when the state court decision "'fairly appears to rest primarily on federal law, or to be interwoven with the federal law,'" *id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983)), the United States Supreme Court also has explained that

> a state court need not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision.

*Harris*, 489 U.S. at 264 n.10 (citation omitted).

Here, the PCR court determined Ground Four was procedurally barred because it was a claim that Petitioner could have raised on direct appeal. [App. 787 (citing S.C. Code Ann. § 17-27-20(b); *Drayton v. Evatt*, 430 S.E.2d 517 (S.C. 1993); *Simmons v. State*, 215 S.E.2d 883 (S.C. 1985)).] The Fourth Circuit has determined that "[t]his rule is both firmly established and regularly followed." *Wilson v. Ozmint*, 357 F.3d 461, 466 n.3 (4th Cir. 2004) (internal quotation marks omitted). In the alternative, the PCR court determined that, even if the claim was not procedurally barred, Petitioner failed to meet his burden to demonstrate Smith rendered ineffective assistance of counsel. [*Id.*] Although the PCR court addressed the merits of Petitioner's federal claim, the court also expressly stated an independent and adequate state law basis for dismissing Ground Four, and therefore, Ground Four is barred from federal habeas review absent a showing of cause and prejudice.

### Ground Five

Respondent argues Ground Five is procedurally barred because Petitioner failed to present this claim to the PCR court and is unable to return to the PCR court to present this claim. [*Id.* at 20.] However, the PCR court's decision reflects that Petitioner did raise Ground Five to the PCR court. [*Compare* Doc. 1 at 18 ("Petitioner was denied effective assistance of counsel in violation of the United States Constitutions Sixth and Fourteenth Amendment Rights when trial counsel failed to object to the state's closing argument."), *with* App. 782–83 (discussing "allegation that trial counsel was ineffective for failing to object to the State's closing argument").] Further, this claim was presented to and ruled upon by the South Carolina Supreme Court. [*See* Docs. 34-9, -16, -17, -18, -19.]

Therefore, Petitioner fairly presented this claim to the highest state court, and accordingly, Ground Five is not procedurally barred from federal habeas review.

### *Cause and Prejudice*

Grounds One and Four are barred from review by this Court unless Petitioner has demonstrated cause for the procedural default and actual prejudice resulting from the alleged constitutional violation or that a fundamental miscarriage of justice has occurred. *See Coleman*, 501 U.S. at 750; *Carrier*, 477 U.S. at 496; *Smith*, 477 U.S. at 533.  The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule.  *Carrier*, 477 U.S. at 488.  *But see Martinez v. Ryan*, --- U.S. ---, ---, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial.").  In this case, Petitioner has failed to even argue cause for the default of Grounds One and Four and, instead, contends they are not procedurally defaulted because he raised these claims in state court.  [*See* Doc. 37.]  Petitioner also failed to argue a fundamental miscarriage of justice has occurred—i.e., that he is actually innocent.  [*See id.*]  Therefore, Grounds One and Four are barred from federal habeas review.

**Merits of Remaining Grounds**

Under the AEDPA, a federal court may not grant habeas relief unless the underlying state court decision was contrary to or an unreasonable application of federal law, as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an

unreasonable determination of the facts before the court, *id.* § 2254(d)(2). The Supreme

Court has held the "contrary to" and "unreasonable application of" clauses present two

different avenues for relief. *Williams*, 529 U.S. at 405 ("The Court of Appeals for the Fourth

Circuit properly accorded both the 'contrary to' and 'unreasonable application' clauses

independent meaning."). The Court stated there are two instances when a state court

decision will be contrary to Supreme Court precedent:

> A state-court decision will certainly be contrary to our clearly
> established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . . A
> state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts
> that are materially indistinguishable from a decision of this
> Court and nevertheless arrives at a result different from our
> precedent.

*Id.* at 405–06. On the other hand, a state court decision is an unreasonable application

of Supreme Court precedent when the decision "correctly identifies the governing legal rule

but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08; *see*

*also Richter*, 131 S. Ct. at 786 ("Under § 2254(d), a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree that

those arguments or theories are inconsistent with the holding in a prior decision of this

Court. . . . It bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."). Finally, a decision cannot be contrary to

or an unreasonable application of Supreme Court precedent unless applicable Supreme

Court precedent exists; without applicable Supreme Court precedent, there is no habeas

relief for petitioners. *Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (citing *Lockhart*

28

*v. Chandler*, 446 F.3d 721, 724 (7th Cir.2006); *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir.2006)); *see Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008).

When evaluating a habeas petition based on a claim of ineffective assistance of counsel, assuming the state court applied the correct legal standard—the Supreme Court's holdings in *Strickland v. Washington*, 466 U.S. 668 (1984)—"[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."[12]  *Richter*, 131 S. Ct. at 785. "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*; *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (stating judicial review of counsel's performance is "doubly deferential when it is conducted through the lens of federal habeas").  Even if a state court decision questionably constitutes an unreasonable application of federal law, the "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, in such situations, the habeas court must determine whether it is possible for fairminded jurists to disagree that the arguments or

---

[12] In *Strickland*, the Supreme Court established that to challenge a conviction based on ineffective assistance of counsel, a prisoner must prove two elements: (1) his counsel was deficient in his representation and (2) he was prejudiced as a result. 466 U.S. at 687.  To satisfy the first prong, a prisoner must show that "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To satisfy the second prong, a prisoner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 692.  The Supreme Court has cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential," and "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

29

theories supporting the state court's decision are inconsistent with Supreme Court precedent. *Id.*

### Ground Two

Petitioner argues he was denied effective assistance of counsel when Smith, his trial counsel, "failed to first proffer evidence of Petitioner's character from witness F[r]itzi Self then ask that the Court allow such character evidence in." [Doc. 1 at 9–10.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Two.

The PCR court held an evidentiary hearing and outlined a factual basis for declining to find Smith's representation fell below the *Strickland* and applicable state law standards. [App. 554–764 (evidentiary hearing and deposition of Self), App. 775–88 (PCR court's findings of fact, conclusions of law, and analysis regarding ineffective assistance claims with respect to Smith).] The PCR court made the following findings as to the claim presented to this Court as Ground Two:

> The allegation that trial counsel was ineffective for failing to proffer evidence of Applicant's character after Judge Clary refused to allow Fritzi Self to testify on that subject is without merit. By way of background, Self was employed as a human resources manager at Grover Industries in North Carolina during the time that Applicant worked at the plant as a die operator on the third shift. Applicant was convicted of murdering a truck driver and assaulting another at a truck stop in Cherokee County, South Carolina. During the defendant's case-in-chief, Self was called to testify regarding when Applicant worked and got paid. Self testified that she did not know Applicant very well, and the State's objection to her offering character evidence was sustained. During her deposition, Self testified as to what she knew about Applicant from work.
> This Court finds that it is unlikely Self would have been allowed to testify on that subject even if a proffer had been

30

made since she based her opinion on the lack of any bad acts on Applicant's work record. Further, Self had no opinion concerning Applicant's character traits in the community at large since she did not know him in that setting. It was in that setting that the crimes were committed. Moreover, Self did not see Applicant very often at work because they worked different shifts and came into contact infrequently. In fact, she had very little knowledge of him upon which to base her opinion. Therefore, this Court finds Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard.

Even if she had been allowed to testify, it is my finding that the outcome of the case would have been the same. There was overwhelming evidence that Applicant was present and did participate in the planning and execution of the crimes. The weak character evidence offered by Self would not have brought the outcome of the trial into question. Therefore, this Court also finds Applicant failed to prove prejudice.

[App. 776–77 (citations omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent. Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*. For example, when asked at trial whether she knew Petitioner, Self answered, "Just strictly as someone who worked on third shift. Not very well." [App. 336.] At her deposition conducted for the

purposes of Petitioner's PCR application, Self testified that, at the plant where she and Petitioner worked, Petitioner was not known to be a thief or to be violent, but Self did not know about Petitioner's character outside of the company.  [App. 757–60.]  Self also testified that she did not often see Petitioner at work because they worked different hours.  [App. 761–62.]  Thus, as the PCR court concluded, there is little testimony from Self to indicate that, even with a proffer of her testimony, the trial court would have allowed her to testify to Petitioner's character or that Self's character testimony would have changed the outcome of the case.  Therefore, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Two.

### Ground Three

Petitioner contends he was denied effective assistance of counsel "when trial counsel failed to investigate and prepare witnesses and call additional witnesses."  [Doc. 1 at 13–14.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Three.

As stated, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find Smith's representation fell below the *Strickland* and applicable state law standards.  [App. 554–764 (evidentiary hearing and deposition of Self), App. 775–88 (PCR court's findings of fact, conclusions of law, and analysis regarding ineffective assistance claims with respect to Smith).]  The PCR court made the following findings as to the claim presented to this Court as Ground Three:

> The allegation that trial counsel was ineffective for failing to adequately investigate and prepare witnesses is without merit.  At the PCR hearing, Applicant claimed that trial

counsel did no investigation at all. However, trial counsel testified that he met with Applicant several times and was prepared for trial. Trial counsel explained that he requested and received the discovery, went to the crime scene and to North Carolina, and talked to witnesses. Trial counsel stated that Reverend Brooks was difficult to reach prior to trial but that he spoke with Kim Weathers, Applicant's girlfriend who was pregnant with Applicant's child, before she testified. Trial counsel explained the purpose of calling Weathers was to show Applicant was in a stable relationship and to establish an incomplete alibi. Trial counsel also explained that he talked with Ida Coleman, Applicant's grandmother, before she testified. Trial counsel also stated that even if he had been able to get in some character evidence from these witnesses he did not believe it would have changed the outcome of the trial.

This Court finds trial counsel's testimony concerning his investigation, preparation and presentation to be credible. Applicant's testimony was not credible at all. In addition, neither Weather's nor Coleman's testimony regarding Applicant's character or reputation was credible. Regardless, it is unlikely their testimony would have been admissible. In fact, Coleman testified similarly during the trial and her testimony was stricken from the record as being improper. Moreover, the Reverend testified both at the trial and the PCR hearing that he did not know Applicant well, so he could not give an opinion as to Applicant's character either. Therefore, this Court finds Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in these regards.

This Court further finds Applicant failed to show any prejudice. Where a PCR applicant fails to show what evidence could have been presented through a different or more thorough investigation, the trial attorney will not be found ineffective. It is my finding that there is no reasonable probability that the outcome of the trial would have been different had trial counsel investigated further or prepared differently. As stated above, neither Applicant's girlfriend nor his grandmother made good witnesses in this regard, and the Reverend had little knowledge of the Applicant. Moreover, other witnesses testified during the trial that Applicant was a peaceful person and was not the type to rob anyone. There was also overwhelming evidence of Applicant's guilt. . . .

33

The allegation that trial counsel was ineffective for failing to call additional witnesses is without merit. Trial counsel explained that he did not call these witnesses for strategic reasons. Trial counsel explained that he considered calling Applicant's mother, Edith Humphries, but decided not to because she could not add anything and would have come across as biased and not believable. Trial counsel also explained that neither Blake Foster nor Nathan Mack would have been helpful and it was not good strategy to bring in witnesses with criminal records. Trial counsel testified that he and Applicant discussed co-defendant Steven Parker but decided it was a risk to call him to testify. Trial counsel explained that Parker was also charged and represented by an attorney who had indicated he would assert his Fifth Amendment right if called.

This Court finds that trial counsel articulated credible and valid reasons for not calling these witnesses. Therefore, this Court finds Applicant failed to carry his burden to show that trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard.

Applicant also failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different but for trial counsel's alleged deficient representation. This Court does not find the testimony of Applicant's mother to be credible. Foster and Mack's testimony was not credible either. Parker's testimony was completely unbelievable as well. Therefore, Applicant failed to prove that these witnesses would have been helpful to his defense. To the extent that Applicant also contends trial counsel should have called a witness named "Wilkins," his claim is purely speculative because he did not present this witness at the PCR hearing. Therefore, Applicant failed to prove any prejudice.

[App. 777–80 (citations and heading omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR

court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  For example, at trial, Smith cross-examined the State's witnesses, called several defense witnesses, and introduced several exhibits.  [*See* App. 2–6, 8.]  Further, at the PCR hearing, Smith articulated his trial strategy, including his investigation, preparation, and selection of witnesses.  [*See, e.g.*, App. 691, 692–702.]  Thus, the record reflects that Smith investigated the case and prepared and selected witnesses as he thought necessary for his trial strategy.  Accordingly, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Three.

### Ground Five

Petitioner contends he was denied effective assistance of counsel "when trial counsel failed to object to the state's closing argument."  [Doc. 1 at 18.]  The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Five.

As stated, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find Smith's representation fell below the *Strickland* and applicable state law standards.  [App. 554–764 (evidentiary hearing and deposition of Self), App. 775–88

(PCR court's findings of fact, conclusions of law, and analysis regarding ineffective assistance claims with respect to Smith).]  The PCR court made the following findings as to the claim presented to this Court as Ground Five:

> The allegation that trial counsel was ineffective for failing to object to the State's closing argument is without merit. Applicant claimed that the solicitor improperly vouched for co-defendant Gaderria Leon Ross during his closing.
>
> The Court finds that Applicant failed to prove trial counsel's representation fell below the standard of professional reasonableness for a criminal defense attorney in this regard. During closing arguments, a solicitor has a right to state his version of the testimony and to comment on the weight to be given to such testimony.  A solicitor must confine his remarks to the record evidence and its reasonable inferences. However, even constitutional prohibitions do not preclude a solicitor from making "a fair response to a claim made by defendant or his counsel."  In Applicant's case, the solicitor's argument on the State's withdrawal of the death penalty notice against the co-defendant was merely a fair response to the allegations made by trial counsel during his closing argument on Applicant's behalf and did not amount to vouching.
>
> Even if the solicitor's argument was improper, Applicant failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different if trial counsel had objected.  Any alleged impropriety in an argument should be reviewed in context of the entire record.  This Court does not believe that the solicitor's argument was such that it caused the trial to be unfair.  The trial judge also instructed the jury that what the attorneys said was not evidence.  Moreover, there was overwhelming evidence of Applicant's guilt under the theory of accomplice liability.  Therefore, Applicant failed to prove any prejudice.

[App. 782–83 (citations omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent.  First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR

36

court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.   Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.   For example, Smith argued in closing that Ross was a professed liar who "said in his testimony that he would do anything to stay out of the death chair" and that Ross avoided the death penalty with his plea deal.   [App. 438, 441, 445.]   Thus, in his closing argument, the solicitor was free to present his version of the facts relevant to Ross's propensity to or motive for lying and the circumstances surrounding the withdrawal of the death notice issued to Ross.   Further, Smith testified at the PCR hearing that he did not see any reason to object to the solicitor's closing argument and did not think the solicitor was improperly vouching.   [App. 703, 739.] Finally, the trial judge instructed the jury that the attorneys' arguments were not evidence in the case.   [App. 430; *see also* App. 739 (testifying that the trial judge gave such an instruction).]   Accordingly, the record supports the PCR court's determination that there was no basis for an objection to the solicitor's closing argument and, if there was a basis for an objection, that Petitioner failed to show prejudice from Smith's failure to object. Consequently, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Five.

### Ground Six

Petitioner argues he was denied effective assistance of counsel "when trial counsel failed to request a jury instruction of character evidence." [Doc. 1 at 20.] The Court concludes Petitioner is not entitled to federal habeas corpus relief based on the allegations raised in Ground Six.

As stated, the PCR court held an evidentiary hearing and outlined a factual basis for declining to find Smith's representation fell below the *Strickland* and applicable state law standards. [App. 554–764 (evidentiary hearing and deposition of Self), App. 775–88 (PCR court's findings of fact, conclusions of law, and analysis regarding ineffective assistance claims with respect to Smith).] The PCR court made the following findings as to the claim presented to this Court as Ground Six:

> The allegation that trial counsel was ineffective for failing to request a jury instruction on character evidence is without merit. Since Applicant failed to prove he was entitled to such a charge, Applicant did not show that trial counsel's performance in this regard was deficient. Even if he was entitled to the charge, Applicant failed to carry his burden of proof to show a reasonable probability that the outcome of the trial would have been different. Applicant did not testify during his trial. The trial court instructed the jury that they were to consider all the evidence and determine the credibility of the witnesses. Further, the evidence of Applicant's guilt was overwhelming. It is also my finding that there is no indication the jury's verdict hinged on the reputation or character of Applicant. Therefore, Applicant failed to prove that he was prejudiced by trial counsel's failure to request this charge.

[App. 783 (citations omitted).]

Upon review, the Court determines the PCR court's denial of Petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is

38

the applicable Supreme Court precedent.  Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.  Thus, the Court concludes the PCR court's decision was not contrary to applicable Supreme Court precedent.

Further, the record supports the PCR court's decision, which demonstrates the PCR court's decision was not an unreasonable application of *Strickland*.  For example, there was very little character evidence presented at trial.  [*See* App. 235–36 (testifying Petitioner was not the kind of person to rob a place), 418–19 (testifying witness did not know Petitioner's reputation for peacefulness in the community but that Petitioner "got along fine" with his co-workers and was "a peaceful guy" as far as the witness knew); *see also* App. 371–73 (striking character testimony), 335–36 (sustaining objection to character evidence), 422–23 (testifying witness had never heard Petitioner discussed in the community).]  At the PCR hearing, Smith testified that, while Petitioner could have been entitled to a character charge, Smith did not believe the character evidence made any difference in Petitioner's case.  [App. 725.]  Further, the trial judge instructed the jury that it was to consider all evidence presented in the case [App. 492–94], which would include the evidence of Petitioner's character.  Thus, the Court concludes the PCR court's decision was not contrary to or an unreasonable application of applicable Supreme Court precedent, and Petitioner is not entitled to habeas corpus relief based on Ground Six.

39

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends Respondent's motion

for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 25, 2013
Greenville, South Carolina